1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                    FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   SCOTT KEITH ERNST,                          No.  2:21-cv-0813 DAD AC P

12              Plaintiff,

13        v.                                      ORDER AND FINDINGS AND
                                                  RECOMMENDATIONS
14   DAVID FRANCES RAMOS, et al.,

15              Defendants.

16

17        Plaintiff, a state prisoner proceeding pro se, seeks relief pursuant to 42 U.S.C. § 1983.

18   Currently before the court is plaintiff's second amended complaint.  ECF No. 29.

19        I.      Statutory Screening of Prisoner Complaints

20        The court is required to screen complaints brought by prisoners seeking relief against "a

21   governmental entity or officer or employee of a governmental entity."  28 U.S.C. § 1915A(a).

22   The court must dismiss a complaint or portion thereof if the prisoner has raised claims that are

23   "frivolous, malicious, or fail[] to state a claim upon which relief may be granted," or that "seek[]

24   monetary relief from a defendant who is immune from such relief."  28 U.S.C. § 1915A(b).

25        A claim "is [legally] frivolous where it lacks an arguable basis either in law or in fact."

26   Neitzke v. Williams, 490 U.S. 319, 325 (1989); Franklin v. Murphy, 745 F.2d 1221, 1227-28 (9th

27   Cir. 1984).  "[A] judge may dismiss . . . claims which are 'based on indisputably meritless legal

28   theories' or whose 'factual contentions are clearly baseless.'"  Jackson v. Arizona, 885 F.2d 639,

1

1   640 (9th Cir. 1989) (quoting <u>Neitzke</u>, 490 U.S. at 327), <u>superseded by statute on other grounds as</u>

2   <u>stated in</u> <u>Lopez v. Smith</u>, 203 F.3d 1122, 1130 (9th Cir. 2000).  The critical inquiry is whether a

3   constitutional claim, however inartfully pleaded, has an arguable legal and factual basis.

4   <u>Franklin</u>, 745 F.2d at 1227-28 (citations omitted).

5          "Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the

6   claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of

7   what the . . . claim is and the grounds upon which it rests.'"  <u>Bell Atl. Corp. v. Twombly</u>, 550

8   U.S. 544, 555 (2007) (alteration in original) (quoting <u>Conley v. Gibson</u>, 355 U.S. 41, 47 (1957)).

9   "Failure to state a claim under § 1915A incorporates the familiar standard applied in the context

10   of failure to state a claim under Federal Rule of Civil Procedure 12(b)(6)."  <u>Wilhelm v. Rotman</u>,

11   680 F.3d 1113, 1121 (9th Cir. 2012) (citations omitted).  In order to survive dismissal for failure

12   to state a claim, a complaint must contain more than "a formulaic recitation of the elements of a

13   cause of action;" it must contain factual allegations sufficient "to raise a right to relief above the

14   speculative level."  <u>Twombly</u>, 550 U.S. at 555 (citations omitted).  "[T]he pleading must contain

15   something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally

16   cognizable right of action."  <u>Id.</u> (alteration in original) (quoting 5 Charles Alan Wright & Arthur

17   R. Miller, <u>Federal Practice and Procedure</u> § 1216 (3d ed. 2004)).

18          "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

19   relief that is plausible on its face.'"  <u>Ashcroft v. Iqbal</u>, 556 U.S. 662, 678 (2009) (quoting

20   <u>Twombly</u>, 550 U.S. at 570).  "A claim has facial plausibility when the plaintiff pleads factual

21   content that allows the court to draw the reasonable inference that the defendant is liable for the

22   misconduct alleged."  <u>Id.</u> (citing <u>Twombly</u>, 550 U.S. at 556).  In reviewing a complaint under this

23   standard, the court must accept as true the allegations of the complaint in question, <u>Hosp. Bldg.</u>

24   <u>Co. v. Trs. of the Rex Hosp.</u>, 425 U.S. 738, 740 (1976) (citation omitted), as well as construe the

25   pleading in the light most favorable to the plaintiff and resolve all doubts in the plaintiff's favor,

26   <u>Jenkins v. McKeithen</u>, 395 U.S. 411, 421 (1969) (citations omitted).

27   ////

28   ////

1    II.    Second Amended Complaint

2         The second amended complaint is separated into eight claims, spans sixty-five pages, and

3    names twenty-eight defendants who plaintiff alleges violated his rights under the First and Eighth

4    Amendment over an approximately four-year period. ECF No. 29. The claims arise from the

5    allegedly deficient treatment plaintiff received for his anal fistula[1] and, as with the first amended

6    complaint, a significant portion of the complaint details conduct by non-defendants or makes

7    general allegations about plaintiff's treatment and condition. Id. Despite plaintiff's failure to

8    comply with the short, plaint statement requirement of Federal Rule of Civil Procedure 8, the

9    court will proceed to summarize and screen the complaint to the best of its ability.

10        The first claim alleges that between August 2018 and June 2019, defendant Ashe was

11   assigned as plaintiff's primary care physician (PCP). ECF No. 29 at 5. Although Ashe ordered

12   wound care when plaintiff's fistula became infected and ordered him sent to the emergency room,

13   she routinely refused to properly document the problem or send any data to the hospital, making it

14   impossible for plaintiff to get proper treatment and ultimately resulting in plaintiff getting the

15   wrong surgery. Id. at 5-7, 17-18.

16        In Claim Two plaintiff alleges that on August 4, 2018, defendant Fourtain used a CT scan

17   from June 22, 2018, instead of ordering a new CT scan, which resulted in a repeat failed surgery.

18   Id. at 8. On September 28, 2018, plaintiff was sent to the emergency room where he had surgery

19   once again due to an infection that developed. Id. When plaintiff woke from the September

20   surgery, he was in extreme pain that required five doses of pain medication to stabilize him, but

21   defendant Sloan falsely recorded that plaintiff had no complications and no fistula was found. Id.

22   On November 29, 2018, Fourtain performed the exact same surgery as that performed in

23   September and it once again failed to fix the fistula. Id. at 9. The failure was due in part to

24   Fourtain's failure to use the proper technique to locate the fistula despite plaintiff explaining the

25   technique that had been used by the nurse to locate it. Id.

26

27   [1] Plaintiff describes the fistula as a "complex rectal horseshoe fistula," which is a hole in his
     rectum that connects to two tunnels on either side of his anus. ECF No. 29 at 5, 40. When
28   plaintiff has a bowel movement, feces goes into the fistula, causing infection. Id.

3

1       Claim Three asserts that on February 22, 2019, defendant Meade and another doctor

2   performed an improper procedure; plaintiff was later told by a specialist that they do not use the

3   procedure because it causes too much pain and only has, at best, a 60% chance of success.  Id. at

4   10.  Defendant then sent plaintiff back to the prison without providing sufficient explanation as to

5   the procedure they performed.  Id. at 11.  Upon his return to the prison, plaintiff was seen by

6   defendant Miller, who told him the doctor would only provide him Tylenol with codeine for the

7   evening and he would get morphine in the morning.  Id. at 12.  Plaintiff punched the door in

8   frustration and Miller told him he would not get anything.  Id.  In retaliation for plaintiff hitting

9   the door, Miller did not put in orders for plaintiff's aftercare for the removal of gauze twenty-four

10   hours from the surgery and pain medication, and instead falsified records to say plaintiff refused

11   treatment.  Id. at 14-15.  The following day, plaintiff went to the medical window and explained

12   he was in so much pain he could barely walk, and the nurse called defendant Beek, who said that

13   plaintiff would not be provided treatment because he had refused and that he should not punch

14   doors.  Id.  Plaintiff then explained what was going on to defendant Limon, a correctional officer,

15   and explained that he was in pain and needed medical treatment.  Id.  Limon called medical and

16   explained that plaintiff said he had not refused treatment and had not gotten called for a follow up

17   and was told that plaintiff had punched a door and they were not going to help him.  Id. at 12-13.

18   Defendant Matharu tried to cover for Miller by writing a prescription for Tylenol that plaintiff did

19   not receive until February 25, 2019.  Id. at 13-14, 41.  When plaintiff submitted an appeal on the

20   issue, defendant Smith refused to interview the officer assistant.  Id. at 13.

21       The fourth claim alleges that in late March 2019 plaintiff informed defendant Ashe that

22   his infection had returned, and she ordered a culture which came back positive for MRSA.  Id. at

23   17.  On April 12, 2019, plaintiff was sent to the hospital for surgery and was seen by defendants

24   Akhila and Ginwalla.  Id.  Ashe failed to send any information with plaintiff and Akhila and

25   Ginwall examined plaintiff, took a culture, and told him there was no infection and they were

26   recommending his antibiotics prescription be discontinued.  Id.  They then performed a seton

27   tightening without pain medication—even though it is supposed to be done under anesthesia—

28   which caused plaintiff excruciating pain.  Id. at 17, 20.  When plaintiff returned to the prison

4

1   Ashe overrode the order to discontinue antibiotics and ordered plaintiff morphine, but another

2   doctor later cancelled the antibiotics.  Id. at 18.  Plaintiff ultimately ended up hospitalized for

3   infection for five days after Fourtain examined him during a follow-up and saw the infection.  Id.

4   at 19.

5          Claim Five alleges that in June 2019, defendant Ramos took over as plaintiff's PCP.  Id. at

6   22.  Shortly thereafter, plaintiff saw Ramos for a follow-up after being released from the hospital.

7   Id. at 23.  Plaintiff advised that his infection was coming back, and Ramos barely examined him

8   before telling plaintiff he would order a lay in for three days.  Id.  When plaintiff protested,

9   defendant Nelson, a nurse, told him to go wait outside.  Id.  While plaintiff was waiting for the

10  order, he told Ramos that he was also supposed to be seen for a follow-up to get supplies and

11  Ramos stated that he was simply seeing plaintiff for his sick call slips and would check to see if

12  plaintiff had an appointment.  Id.  While Ramos was checking the schedule, Nelson gave plaintiff

13  the lay in slip told him to leave.  Id.  When plaintiff protested that the doctor was checking the

14  schedule about his follow-up appointment, Nelson told the correctional officers that plaintiff

15  could leave and the officers ordered him out of the clinic, preventing plaintiff from being seen for

16  his appointment.  Id.

17         Plaintiff put in a sick call slip saying the doctor was "turning condition into a form of

18  rape" and he was called into the program office by Orozco, a correctional sergeant, and asked to

19  explain what was going on.  Id. at 24.  Plaintiff explained all the issues with his treatment and

20  Orozco told him that he was not a doctor, could not make medical decisions, and that all he could

21  do was forward the information to his superior officers and recommend that if plaintiff had an

22  infection or pain he should put in a sick call slip.  Id.  Ramos then retaliated against plaintiff for

23  filing the complaint by reporting that he was displaying drug seeking behavior, refusing to order

24  plaintiff supplies to clean his wounds, discontinuing his pain medication,[2] and falsely recording

25  that plaintiff had no infection.  Id. at 26, 28, 30, 32, 34-36.

26

27  [2] Plaintiff alleges that while Ramos offered him Cymbalta or Elavil as an alternative, he had tried
    those medications in the past and ended up suicidal, which he relayed to Ramos.  ECF No. 1 at
28  26, 28.

1    In his sixth claim, plaintiff alleges that after going to the hospital for another seton

2  tightening on June 27, 2019, defendant Meade, who knew plaintiff was being tortured, said that

3  he could keep plaintiff admitted at the hospital until his pain went down to a seven out of ten.  Id.

4  at 37.  Before being discharged from the hospital, plaintiff was seen by defendants Matoala and

5  White, and he explained to them that if they did not send detailed recommendations for supplies

6  and pain medication to the prison, he would not receive anything up on his return.  Id. at 30, 37.

7  They wrote him a recommendation for pain medication but did not send a recommendation for

8  hygiene supplies.  Id. at 37.  Upon his return to the prison, defendant Singh, a nurse, refused to

9  inform the doctor that plaintiff needed pain medication and hygiene supplies and told plaintiff it

10  was because he filed an appeal against Miller.  Id. at 37-39.  When plaintiff confronted Miller

11  about the retaliation, Miller called him a crybaby and told him to "keep my name out your

12  mouth."  Id. at 38.  Plaintiff began kicking the door to his cell until defendant Ansawani, a

13  sergeant, responded.  Id.  Plaintiff told Ansawani that Singh was refusing to report his condition

14  to the doctor or give him an order for a cell-feed or lay in.  Id.  Ansawani told him that he could

15  not make medical decisions but that he would talk to Miller and Singh and could order a cell-feed

16  for the night.  Id.  When plaintiff filed an appeal about the incident, defendant Washington

17  covered for Singh and failed to interview Ansawani.  Id. at 39.  On October 27, 2021, Miller

18  manipulated records after plaintiff returned from the hospital to make it look like he had already

19  been seen so that plaintiff would not get examined.  Id.

20    The seventh claim alleges that plaintiff was seen by defendant Wong on numerous

21  occasions between February and September 2020.  Id. at 40-48.  During that time, Wong

22  repeatedly failed to document plaintiff's recurring infections—even when he prescribed

23  antibiotics—or the hole in his rectum and instead falsely documented that plaintiff refused exams,

24  which prevented plaintiff from obtaining proper care.  Id.  On August 13, 2020, Wong cancelled

25  plaintiff's appointment, told plaintiff he could "write an appeal like you always do," and wrote a

26  false report saying that plaintiff had been examined and there was no fistula or infection found.

27  Id. at 44.  Plaintiff was also seen by Matharu on February 10, 2020, and Matharu retaliated

28  against plaintiff by prescribing him antibiotics instead of sending him to the hospital.  Id. at 41.

6

1    In March 2020 Wong put in a permanent order for weekly hygiene supplies, including

2    wipes. Id. at 41.  Defendant Smith responded to an appeal and found the weekly supplies that

3    were ordered were adequate. Id. at 42, 45.  In May 2020, plaintiff was informed that defendant

4    Bal instituted a new policy limiting wipes to twice per month due to COVID shortages, plaintiff

5    was later informed that defendant Vaughn was responsible for the order. Id.  Wong refused to

6    override the order but did provide plaintiff with an extra pack of wipes on June 1, 2020, when he

7    noted that plaintiff had an active infection. Id. at 43.  When plaintiff wrote an appeal, it was

8    answered by Vaughn, who refused to investigate. Id. at 45.  Between June and August 2020,

9    plaintiff was seen by defendants Davis, Welch, and Roderick, all nurses, who refused to examine

10   him when seeing him for his sick call slips for supplies but emailed the doctor about additional

11   hygiene supplies. Id. at 44.  During this time, plaintiff was again seen by Meade, who explained

12   the dangers of plaintiff getting an infection, told him that surgery "isn't exactly a magic wand,"

13   and referred him to a specialist. Id. at 42-43.

14   Finally, in Claim Eight, plaintiff alleges that on March 15, 2022, defendant Miraflor

15   wanted to trim the tissue on the holes in his rectum so that when the trimmed parts healed they

16   would close the holes. Id. at 50-53.  Plaintiff told her that he has a fistula and that if she was not

17   going to find it and just trim the tissue, he did not want the procedure. Id. at 53.  She lied and told

18   him that she would try to find the fistula, causing plaintiff agreed to surgery only to find upon

19   waking that Miraflor had simply gone in and trimmed the tissue. Id. at 53-54.  After the surgery

20   plaintiff developed an abscess and saw defendant Vang, his PCP at the time. Id. at 54.  Vang told

21   plaintiff he would recommend he see a different specialist and sent plaintiff to the emergency

22   room for his abscess but later edited the records to say plaintiff had no abscess to cover for the

23   emergency room doctor who refused him treatment. Id. at 54-56.  During a follow-up, Vang told

24   plaintiff that the request for a different specialist was denied and that if plaintiff wanted to see

25   someone different, he would have to pay for it himself. Id. at 56.  Defendant Bal reviewed

26   plaintiff's appeal related to Miraflor and found nothing wrong. Id. at 57-58.

27   ////

28   ////

1        III.     Personal Involvement

2        "Liability under § 1983 must be based on the personal involvement of the defendant,"

3     Barren v. Harrington, 152 F.3d 1193, 1194 (9th Cir. 1998) (citing May v. Enomoto, 633 F.2d

4     164, 167 (9th Cir. 1980)), and "[v]ague and conclusory allegations of official participation in civil

5     rights violations are not sufficient," Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)

6     (citations omitted).  Plaintiff has not identified any conduct by defendant Covello and therefore

7     fails to state any claims for relief against him.

8        IV.     Official Capacity Claims

9        Claims for damages against state officials acting in their official capacity are barred by

10    sovereign immunity because "a suit against a state official in his or her official capacity is not a

11    suit against the official but rather is a suit against the official's office" and therefore "no different

12    from a suit against the State itself," Will v. Mich. Dep't of State Police, 491 U.S. 58, 71 (1989)

13    (citations omitted), and plaintiff does not seek any specific injunctive relief from any defendant,

14    ECF No. 29 at 64.  Plaintiff therefore fails to state claims for relief against any defendant in their

15    official capacity.

16       V.     Deliberate Indifference

17       "[T]o maintain an Eighth Amendment claim based on prison medical treatment, an inmate

18    must show 'deliberate indifference to serious medical needs.'"  Jett v. Penner, 439 F.3d 1091,

19    1096 (9th Cir. 2006) (quoting Estelle v. Gamble, 429 U.S. 97, 104 (1976)).  This requires plaintiff

20    to show (1) "a 'serious medical need' by demonstrating that 'failure to treat a prisoner's condition

21    could result in further significant injury or the unnecessary and wanton infliction of pain,'" and

22    (2) "the defendant's response to the need was deliberately indifferent."  Id. (some internal

23    quotation marks omitted) (quoting McGuckin v. Smith, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

24    Deliberate indifference is established only where the defendant *subjectively* "knows of and

25    disregards an *excessive risk* to inmate health and safety."  Toguchi v. Chung, 391 F.3d 1051, 1057

26    (9th Cir. 2004) (emphasis added) (citation and internal quotation marks omitted).

27       Deliberate indifference "may appear when prison officials deny, delay or intentionally

28    interfere with medical treatment."  Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)

1   (citation omitted).  However, a difference of opinion between an inmate and prison medical

2   personnel—or between medical professionals—regarding the appropriate course of treatment

3   does not by itself amount to deliberate indifference to serious medical needs.  Toguchi, 391 F.3d

4   at 1058; Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  To establish that a difference of

5   opinion rises to the level of deliberate indifference, plaintiff "must show that the course of

6   treatment the doctors chose was medically unacceptable under the circumstances."  Jackson v.

7   McIntosh, 90 F.3d 330, 332 (9th Cir. 1996) (citation omitted).

8        Plaintiff's allegations against defendants Ashe, Miller, Beek, Akhila, Ginwalla, Ramos,

9   Nelson, Singh, Wong, and Miraflor are sufficient to state claims for deliberate indifference and

10   these defendants will be required to respond to the complaint.  However, he fails to state

11   cognizable claims against any other defendants.

12        The allegations that Fourtain, Sloan, Meade, Matharu, and Vang demonstrate, at most, a

13   difference of opinion as to the proper course of treatment.  The fact that Fourtain relied on a six-

14   week-old CT scan, failed to use a technique explained by plaintiff, and performed ultimately

15   unsuccessful surgeries does not demonstrate deliberate indifference.  Plaintiff's allegation that

16   Sloan falsely recorded that he did not have any complications because he awoke from surgery in

17   extreme pain is also no more than a difference of opinion as to what constitutes a complication

18   and by plaintiff's own allegations, no fistula was found during the surgery.  Similarly, the

19   allegation that Meade performed an improper procedure establishes no more than a difference of

20   opinion between medical professionals as to what procedure should be used.  The additional

21   assertion that Meade failed to provide sufficient explanation as to the procedure he performed and

22   would only keep plaintiff in the hospital until his pain level dropped to a seven also fail to state

23   claims for relief.  There are no allegations that Meade knew the information he sent was

24   insufficient, that it was medically unacceptable to release plaintiff once his pain levels dropped,

25   or that he had authority to retain plaintiff at the hospital absent a medical need.  Plaintiff's

26   contention that Matharu tried to cover for Miller by writing a prescription also fails to state a

27   claim because it shows that Matharu provided treatment in the form of pain medication and there

28   are no facts showing that Matharu was responsible for the delay in plaintiff's receipt of the

1   medication.  Plaintiff's disagreement with Matharu's decision to prescribe antibiotics instead of

2   sending him to the hospital is also no more than a difference of opinion as to the proper course of

3   treatment.  With respect to Vang, the allegations demonstrate that Vang sent plaintiff for

4   treatment and attempted to have plaintiff seen by a different specialist, as requested.

5        Plaintiff's assertion that Matoala and White failed to send appropriate recommendations

6   for hygiene supplies also fails to state a claim for deliberate indifference.  Although plaintiff told

7   them he would not get supplies if they did not specifically recommend them, even assuming they

8   did not issue a recommendation for supplies, there are no facts indicating that the omission was

9   deliberate or that Matoala and White were attempting to deprive plaintiff of appropriate aftercare.

10  Plaintiff also fails to state a claim against Bal and Vaughn based on their order limiting wipes due

11  to COVID shortages.  The allegations demonstrate that Bal and Vaughn were taking reasonable

12  measures to manage a limited resource.  See Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir.

13  2014) (defendant not liable for lack of resources for which he is not responsible and "even if an

14  official knows of a substantial risk, he's not liable 'if [he] responded reasonably'" (alteration in

15  original) (quoting Farmer v. Brennan, 511 U.S. 825, 844 (1994))).

16       Plaintiff also fails to state claims for deliberate indifference against Limon, Orozco, and

17  Ansawani, all of whom are alleged to be correctional staff.  Each defendant advised him that they

18  had no authority over medical decisions, and the allegations indicate that they did what they were

19  able by calling medical as requested, talking to the medical staff at issue, forwarding plaintiff's

20  complaints, and advising plaintiff to put in medical slips if he needed medical assistance.  The

21  allegations that Davis, Welch, and Roderick, all of whom are nurses, refused to examine plaintiff

22  also fail to state claims for deliberate indifference because plaintiff alleges that even though they

23  did not examine him, they forwarded his requests for hygiene supplies to the doctor.  There is no

24  indication that their failure to examine him resulted in the delay or denial of treatment.

25       With respect to plaintiff's claims that Smith, Washington, or Bal denied his grievances or

26  failed to properly investigate them, prison administrators cannot willfully turn a blind eye to

27  constitutional violations being committed by subordinates.  See Jett, 439 F.3d at 1098 (prison

28  administrators "are liable for deliberate indifference when they knowingly fail to respond to an

10

1  inmate's requests for help" (citations omitted)).  Therefore, an individual who denies an inmate

2  appeal and who had the authority and opportunity to prevent an ongoing constitutional violation

3  could potentially be subject to liability if the individual knew about an existing or impending

4  violation and failed to prevent it.  See id.  However, plaintiff's allegations fail to state a claim for

5  relief because they indicate he complained of completed violations and they do not show that his

6  grievances contained information that would have put any of these defendants on notice of any

7  *ongoing* constitutional violation such that they could have intervened.

8      VI.    Retaliation

9      A viable First Amendment claim for retaliation must establish the following five

10  elements: "(1) An assertion that a state actor took some adverse action against an inmate (2)

11  because of (3) that prisoner's protected conduct, and that such action (4) chilled the inmate's

12  exercise of his First Amendment rights, and (5) the action did not reasonably advance a legitimate

13  correctional goal."  Rhodes v. Robinson, 408 F.3d 559, 567-68 (9th Cir. 2005) (footnote and

14  citations omitted).

15      Plaintiff has alleged sufficient facts to state claims for retaliation against Ramos, Singh,

16  and Miller.  Although the claim that Miller refused plaintiff treatment for punching a door does

17  not state a claim for retaliation because punching a door is not protected conduct, there are

18  sufficient facts to infer that Miller told Singh to refuse plaintiff treatment because of the grievance

19  he filed.  However, plaintiff fails to state a claim for retaliation against Matharu because there are

20  insufficient facts to demonstrate that Matharu's decision to prescribe him antibiotics instead of

21  sending him to the hospital was motivated by his protected conduct.

22      VII.    No Leave to Amend

23      Leave to amend should be granted if it appears possible that the defects in the complaint

24  could be corrected, especially if a plaintiff is pro se.  Lopez v. Smith, 203 F.3d 1122, 1130-31

25  (9th Cir. 2000) (en banc).  However, if, after careful consideration, it is clear that a complaint

26  cannot be cured by amendment, the court may dismiss without leave to amend.  Cato v. United

27  States, 70 F.3d 1103, 1105-06 (9th Cir. 1995).

28      The undersigned finds that, as set forth above, the portions of the complaint fail to state

11

1   claims upon which relief may be granted.  Plaintiff has already been given an opportunity to

2   amend the complaint and advised what kind of information he needed to provide.  Moreover,

3   given the level of factual detail, clarity, and precision with which plaintiff has set forth his claims,

4   it is clear that he has presented all pertinent facts known to him.  Considering the nature of

5   plaintiff's previous filings and the detail provided in the second amended complaint, the

6   undersigned is convinced that further leave to amend would not result in additional cognizable

7   claims and would likely once again result in a complaint that violates Rule 8.  Accordingly, the

8   undersigned finds that further leave to amend would be futile and the claims and defendants

9   identified above should be dismissed without leave to amend.  Plaintiff will be required to return

10  service paperwork for defendants Miraflor, Akhila, and Ginwalla, who he represents as being

11  employed by outside hospitals.  By separate order the court will direct e-service on defendants

12  Ashe, Miller, Beek, Ramos, Nelson, Singh, and Wong, who are alleged to be employees of the

13  California Department of Corrections and Rehabilitation.

14       VIII.   Plain Language Summary of this Order for a Pro Se Litigant

15       Some of the allegations in the complaint state claims against the defendants and some do

16  not.  You have alleged sufficient facts to state claims for deliberate indifference against

17  defendants Ashe, Miller, Beek, Akhila, Ginwalla, Ramos, Nelson, Singh, Wong, and Miraflor and

18  for retaliation against Ramos, Singh, and Miller.  You have not stated any other claims against

19  any other defendants.  You also have not stated claims against any defendants in their official

20  capacities.  Because it does not appear that further leave to amend would result in more claims for

21  which relief can be granted, it is being recommended that all other claims and defendants be

22  dismissed without leave to amend.  You will need to complete service paperwork for defendants

23  Miraflor, Akhila, and Ginwalla.  E-service on defendants Ashe, Miller, Beek, Ramos, Nelson,

24  Singh, and Wong will be directed in a separate order.

CONCLUSION

26       Accordingly, IT IS HEREBY ORDERED that:

27       1.   The allegations of the second amended complaint state claims for deliberate

28  indifference against defendants Ashe, Miller, Beek, Akhila, Ginwalla, Ramos, Nelson, Singh,

12

1    Wong, and Miraflor in their individual capacities and for retaliation against Ramos, Singh, and

2    Miller in their individual capacities.  Service is therefore appropriate for these defendants.

3            2.   The Clerk of the Court shall send plaintiff three USM-285 forms, one summons, an

4    instruction sheet, and a copy of the second amended complaint filed November 28, 2022.

5            3.   Within thirty days from the date of this order, plaintiff shall complete the attached

6    Notice of Submission of Documents and submit the following documents to the court:

7                a.   The completed Notice of Submission of Documents;

8                b.   One completed summons;

9                c.   One completed USM-285 form for each of the following defendants: Miraflor,

10                    Akhila, and Ginwalla; and

11               d.   Four copies of the endorsed second amended complaint filed November 28,

12                   2022.

13           4.   Plaintiff need not attempt service on defendants and need not request waiver of

14   service.  Upon receipt of the above-described documents, the court will direct the United States

15   Marshal to serve the above-named defendants pursuant to Federal Rule of Civil Procedure 4

16   without payment of costs.

17           5.   E-service on defendants Ashe, Miller, Beek, Ramos, Nelson, Singh, and Wong will be

18   directed by separate order.  Plaintiff should not complete service paperwork for these defendants

19   unless ordered to do so by the court.

20           IT IS FURTHER RECOMMENDED that all claims and defendants be dismissed without

21   leave to amend except for the claims for deliberate indifference against defendants Ashe, Miller,

22   Beek, Akhila, Ginwalla, Ramos, Nelson, Singh, Wong, and Miraflor in their individual capacities

23   and for retaliation against Ramos, Singh, and Miller in their individual capacities.

24           These findings and recommendations are submitted to the United States District Judge

25   assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l).  Within twenty-one days

26   after being served with these findings and recommendations, plaintiff may file written objections

27   with the court.  Such a document should be captioned "Objections to Magistrate Judges Findings

28   ////

and Recommendations." Plaintiff is advised that failure to file objections within the specified time may waive the right to appeal the District Court's order. <u>Martinez v. Ylst</u>, 951 F.2d 1153 (9th Cir. 1991).

DATED: October 24, 2023

_____
ALLISON CLAIRE
UNITED STATES MAGISTRATE JUDGE

14